HEATHER S. WHITE (7674)
DANI N. CEPERNICH (14051)
SNOW CHRISTENSEN & MARTINEAU
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah 84145
Telephone: (801) 521-9000
hsw@scmlaw.com
dnc@scmlaw.com

*Attorneys for Defendants Ogden City, Morgan County, Roy City, Lucas Call and Tyler Tomlinson*

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| LEONARD MARION,<br><br>Plaintiffs,<br><br>vs.<br><br>WEBER COUNTY, OGDEN CITY, MORGAN COUNTY, ROY CITY, LUCAS CALL, TYLER TOMLINSON and BRANDON MILES;<br><br>Defendants. | **REPLY MEMORANDUM SUPPORTING MOTION TO DISMISS (DKT. NO. 8)**<br><br>Case No. 1:18CV148 RJS PMW<br><br>Judge Robert J. Shelby<br>Magistrate Paul M. Warner |
|---|---|

Defendants Ogden City, Morgan County, Roy City, Lucas Call, and Tyler Tomlinson (Defendants) submit this reply memorandum supporting their motion to dismiss (Dkt. No. 8).

## ARGUMENT

### I. MR. MARION'S AMENDED COMPLAINT SHOULD BE DISMISSED FOR INSUFFICIENT SERVICE OF PROCESS.

Mr. Marion acknowledges he failed to timely serve Defendants under Rule 4, such that his service of process was insufficient. He argues, however, his case should not be dismissed

because his counsel operated under mistaken assumptions and Defendants failed to establish prejudice from the delay. As to the latter, Mr. Marion cited no authority—nor are Defendants aware of any—that considers prejudice in the evaluation of whether dismissal is required.

Defendants recognize, however, under Rule 4(m), a plaintiff who shows good cause for failure to timely effect service is entitled to a mandatory extension of time. *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995). But, Mr. Marion has not offered evidence of good cause. Instead, his explanation is limited to the fact counsel "operated under two mistaken assumptions: 1) that the period for service of process was 120 days (as in the Utah Rules of Civil Procedure); and 2) that filing of the amended complaint reset the time to serve Defendants." (Opp. [Dkt. No. 13] at 2.) Such "inadvertence or negligence alone do not constitute 'good cause' for failure of timely service." *In re Kirkland*, 86 F.3d 172, 176 (10th Cir. 1996). "Mistake of counsel or ignorance of the rules also usually do not suffice." *Id.*

Mr. Marion's only explanation for the significant delay in service of process does not constitute "good cause," such that Mr. Marion is not entitled to an automatic extension of time. The "the district court must still consider whether a permissive extension of time may be warranted." *Womble v. Salt Lake City Corp.*, 84 F. App'x 18, 20 (10th Cir. 2003) (unpublished). "The court may then, within its discretion, dismiss without prejudice or extend the time for service." *Id.* Mr. Marion, however, did not address this issue or offer any reason beyond his counsel's mistake regarding the rules for why his failure to timely serve process should be excused. Due to this failure, the Court should not exercise its discretion to excuse Mr. Marion's insufficient service of process and should instead dismiss his amended complaint. *See id.*

## II. THE CLAIMS AGAINST MORGAN COUNTY SHOULD BE DISMISSED.

### a. Mr. Marion has not identified any allegations of Morgan County's personal involvement sufficient to defeat a motion to dismiss.

Mr. Marion argued he sufficiently pled personal involvement of Morgan County because (1) "Officers Call and Tomlinson were both members of the Strike Force and claimed to be acting on its behalf on the night of the incident"; and (2) "discovery is necessary to determine the extent to which Morgan County directs or controls the actions of the Strike Force" and it "would be premature to require" such evidence at the pleading stage. (Opp. [Dkt. No. 13] at 3.)

Mr. Marion's argument is inconsistent with the requirement a plaintiff "plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). A "Plaintiff cannot wait for discovery in order to state plausible allegations in support of his claims." *Eagle v. Freeport-McMoran, Inc.*, No. 2:15-CV-00577-MV-SMV, 2016 WL 7494277, at *6 (D.N.M. May 26, 2016) (unpublished). And, contrary to Mr. Marion's assertion, the amended complaint does not include any allegations that Officers Call and Tomlinson claimed to be acting on behalf of the Strike Force at the time of the incident, or any facts describing how, if at all, *Morgan County's* policies or customs governed the actions of members of the Strike Force. Such factual allegations are necessary to plausibly assert claims against Morgan County.

### b. Morgan County maintains the Court lacks jurisdiction over Mr. Marion's state law claims against it, though they should be dismissed regardless.

Morgan County moved to dismiss Mr. Marion's state law claims on the basis the Court lacks jurisdiction over those claims given Mr. Marion did not serve Morgan County with a notice of claim as required under the GIA. In support, it offered the declaration of the Morgan County

Attorney. In his response, Mr. Marion offered a declaration of his counsel stating counsel sent the notice of claim to the Morgan County clerk via certified mail, and that while he "maintained the returns of service from the USPS in a physical file," he has "moved office space four times and [is] not currently able to produce the proof of service from USPS." (Hanks Decl. [Dkt. No. 13-1] ¶¶ 3-5.) While Morgan County maintains this is insufficient to establish that it was effectively served with the notice of claim, *see* Utah Code §§ 63G-7-401(b)(ii) (referencing the mailing requirements of Section 68-3-8.5), 68-3-8.5(b) (establishing requirements for deeming a mailing not received to be effective as of date of mailing), the Court need not reach this issue. As discussed below, Defendants additionally argued that each of Mr. Marion's state law claims is barred by the applicable statute of limitations, and Mr. Marion has not contested this argument.

## III. MR. MARION DID NOT DISPUTE HIS STATE LAW CLAIMS ARE BARRED BY THE GIA'S ONE-YEAR STATUTE OF LIMITATIONS.

Mr. Marion did not address Defendants' argument that his eight state law claims are barred by the GIA's one-year statute of limitation. (Mot. [Dkt. No. 8] at 10-11.) As a result, and as set forth in Defendants' motion, Mr. Marion's state law claims should be dismissed.

## IV. MR. MARION'S EXCESSIVE FORCE CLAIM UNDER § 1983 (SIXTH CAUSE OF ACTION) SHOULD BE DISMISSED.

### a. Mr. Marion has not established that, under his own allegations, Officers Call and Thomlinson were acting under the color of state law.

Defendants moved to dismiss Mr. Marion's excessive force claim under §1983 (sixth cause of action) on the basis their alleged conduct at Lee's Mongolian BBQ cannot give rise to a claim under § 1983, because under Mr. Marion's allegations, Officers Call and Tomlinson were not acting under color of state law. In responding to this argument, Mr. Marion did not address

any of the cases cited by Defendants. Instead, he points to five bases "for the Court to find that the officers acted under color of law." (Opp. [Dkt. No. 13] at 3-4.) None is sufficient.

First, Mr. Marion fails to explain how the mere fact Officer Tomlinson, who is also a member of the Weber-Morgan Strike Force and involved in the incident, renders both his and Officer Call's actions state action rather than private conduct. Accepting Mr. Marion's unsupported assertion as true, any conduct by two government employees is necessarily considered state action regardless of the other indicia (or lack of) they were acting under a badge of state authority. This is not the law. Indeed, the Tenth Circuit has held that *three on-duty* officers were *not* acting under color of state law when they committed a "practical joke" mock robbery of a 7–Eleven because, even though on-duty, "the defendants . . . were not using their badges of authority, i.e., their positions as policeman for the Town of Torrington to accomplish the 7–Eleven prank." *Haines v. Fisher*, 82 F.3d 1503, 1505-06, 1508 (10th Cir. 1996).

Second, Mr. Marion's second and third proffered bases—that the officers "claimed to have been acting in their capacity as law enforcement officers for Strike Force" and "filed police reports asserting that they had been acting in their official capacity" (Opp. [Dkt. No. 13] at 4)—are not supported by any factual allegations in the amended complaint. While Mr. Marion has alleged that "*Weber County* claimed . . . that Defendants Call and Thomlinson were attempting a lawful arrest," there are no allegations that either Officer made such a representation.[1] Indeed, Mr. Marion's claims appear to be based on the notion that this assertion was false and fabricated.

[1] Mr. Marion also alleged Officers Call Tomlinson "filed false and fraudulent police reports in which they accused Plaintiff of assaulting and attempting to murder them." (Am. Compl. [Dkt. No. 7] ¶ 68.) But, he has *not* alleged they reported they were acting under color of state law.

Third, while Mr. Marion has alleged that the officers "changed into police uniforms before taking pictures at the crime scene for CSI Officers," this fact is not determinative. Again, in *Haines*, the Tenth Circuit affirmed the district court's summary judgment ruling that on-duty officers who played a "practical joke" on the plaintiff were not acting under color of state law, even though they were on-duty and the officer who "played" the robber wore a disguise made up of clothing belonging to the Town and used a weapon belonging to the Town. *Haines*, 82 F.3d at 1505-06, 1508. The Court explained, "if, as Haines alleged in his complaint, 'the purpose behind one or more of the Defendants' conduct was to scare [him] so that he would be intimidated by them and lured into their lurid alternative life style,' the acts of the individual defendants would clearly fall within 'the gambit of their personal pursuits' and could not be considered acts under color of state law." *Id.* at 1508 (citations omitted). The same is true here. Even if the officers changed into uniform after the altercation with Mr. Marion, if, as he alleges, the altercation was motivated by the fact Mr. Marion and Officer Call were both allegedly in an intimate relationship with the same woman and Officer Call's attendant jealousy, (Am. Compl. [Dkt. No. 7] ¶¶ 13-17), his and Officer Tomlinson's actions "clearly fall within the gambit of their personal pursuits."

Fourth, Mr. Marion points to Defendants' recognition that he "did allege that both officers were acting in their official capacity." (Opp. [Dkt. No. 13] at 4.) However, as Defendants noted in their motion, the Court need not accept "legal conclusions": "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. *Hall v. Associated Int'l Ins. Co.*, 494 F. App'x 902, 904 (10th Cir. 2012). Mr. Marion's allegation that "[a]ll individual Defendants . . . at all times relevant hereto, were acting under the color of state law in their capacity as Ogden, Roy, Weber,

or Morgan police officers and their acts or omissions were conducted within the scope of their official duties or employment" (Am. Compl. [Dkt. No. 7] at 11, ¶ 94), is precisely such an allegation. It is a legal conclusion to be reached after applying the legal framework set forth in Defendants' motion to the particular facts of this case. And, while Mr. Marion asserts in his opposition that "the actions taken by the officers suggest that they considered themselves to be operating in their official capacity," Mr. Marion has failed to provide any support for this assertion. As discussed above, the specific "facts" Mr. Marion relies on do *not* support this assertion. And, he has not pointed to any other facts in the amended complaint that would do so.

Because under Mr. Marion's own alleged versions of the events, there is not a sufficient nexus between Officer Call's and Officer Tomlinson's conduct and their badge of state authority, their alleged conduct at Lee's Mongolian BBQ cannot serve as the basis of a claim under § 1983.

**b. Mr. Marion has failed to sufficiently plead a basis for municipal liability.**

Defendants moved to dismiss Mr. Marion's § 1983 claim against Ogden City and Roy City on the additional basis that he had failed to sufficiently plead municipal liability. Mr. Marion's limited argument on this issue—which does not address this Court's holding in *Yocum v. Utah*, No. 1:16-CV-00098, 2017 WL 448586, at *6 (D. Utah Feb. 2, 2017) (unpublished)—appears to misunderstand the requirements for such a claim.

Rather than point to any allegations regarding a specific written or unwritten policy of either entity, or factual allegations regarding "continuing, persistent and widespread" unconstitutional acts of a similar nature to those alleged in this case, *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008), Mr. Marion argues that "the actions taken by the officers were pursuant to customs and usages of the municipal defendants." (Opp. [Dkt. No. 13]

at 4.) Specifically, he points to (1) the allegation that co-Defendant Brandon Miles "attempted to protect the municipal defendants and other defendants by attempting to leverage a concurrent criminal case to induce Plaintiff to abandon the claims against the municipal defendants"; (2) "the removal of surveillance footage and equipment by the municipal defendants in order to cover up the malfeasance of their officers"; (3) "the attempt to induce the death of the Plaintiff by directing the emergency medical technicians who arrived on scene"; and (4) other unspecified "actions taken by law enforcement to normalize the encounter/assault." (*Id.* at 4-5.) None, however, satisfies the requirements for municipal liability.

None of the above are indicative of a formal or informal unconstitutional policy of Ogden City or Roy City. Instead, it appears that Mr. Marion believes the involvement of multiple governmental employees in the incident giving rise to a § 1983 is sufficient to establish municipal liability. This is not the law. *See* *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) ("A municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." (quotation marks omitted)); *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

To the extent Mr. Marion's argument is that the response to the allegedly unlawful conduct in this case can satisfy the policy or custom requirement for municipal liability, there are two problems with this argument. First, any action of Mr. Miles—Deputy Weber County Attorney (Am. Compl. [Dkt. No. 7] at 2, ¶ 4)—cannot be attributed to Ogden City or Roy City,

neither of which employed him. *See Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) ("Mr. and Mrs. Jenkins have offered no evidence or legal authority to support the notion that Agent Sabel, as a KBI agent, could act as a policy maker for the City of Topeka."). Second, even if Mr. Marion could establish an unconstitutional policy, custom, or failure to train based on others' responses to the incident at Lee's Mongolian BBQ, such conduct, which occurred *after* that incident, could not have been the moving force behind that incident. *See Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("As for any failure to discipline Officer Aragon, basic principals [sic] of linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation. A subsequent cover-up might provide circumstantial evidence that the city viewed the [constitutional] policy as a policy in name only and routinely encouraged contrary behavior . . . . A failure to investigate or reprimand might also cause a future violation by sending a message to officers that such behavior is tolerated. It does not, however, in and of itself constitute a causal connection in the immediate case."); *Hatch v. Wasatch Cnty.*, No. 2:10-CV-01204-DS, 2017 WL 3327574, at *6 (D. Utah Aug. 3, 2017) (unpublished) ("There is no viable evidence that Wasatch County had knowledge, either actual or imputed constructive knowledge, of Epperson's conduct prior to the acts alleged.").

Finally, to the extent Mr. Marion's argument is that the response to the allegedly unlawful conduct ratified the same, he has not pointed to any facts supporting the required elements of a ratification theory. As the Tenth Circuit has explained, "a municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." *Bryson*, 627 F.3d at 790. There are no allegations of any such specific ratification, let alone by a final decisionmaker.

Mr. Marion has failed to establish he has "allege[d] sufficient facts to show that a specific policy or custom was the moving force behind the alleged violation." *Dalcour v. City of Lakewood*, 492 F. App'x 924, 930 (10th Cir. 2012) (unpublished).

## V. MR. MARION'S CLAIM UNDER ARTICLE I, SECTION 14 OF THE UTAH CONSTITUTION (SIXTH CAUSE OF ACTION) SHOULD BE DISMISSED.

Defendants moved to dismiss Mr. Marion's claim under article I, section 14 on two bases: first, it is barred by the applicable two-year statute of limitations (Mot. [Dkt. No. 8] at 18); second, Mr. Marion's complaint fails to state a claim (*id.* at 19-20). Mr. Marion did not address the statute of limitations in his opposition. (Opp. [Dkt. No. 13] at 5.) His claim should be dismissed on this basis alone. Even if not, Mr. Marion failed to establish he stated a claim.

Defendants argued that Mr. Marion's claim under article I, section 14 of the Utah Constitution is subject to dismissal for much the same reasons as his excessive force claim under § 1983: Mr. Marion has failed to allege Officer Call's and Officer Tomlinson's conduct is state action that can support a constitutional claim, *see State v. Watts*, 750 P.2d 1219, 1221 (Utah 1988), and Mr. Marion has failed to allege "an action pursuant to official municipal policy of some nature caused a constitutional tort" as required to maintain a claim against Ogden City and Roy City, *Kuchcinski v. Box Elder Cnty.*, 2019 UT 21, ¶ 32, --- P.3d ----. Mr. Marion did not meaningfully address either argument.

First, Mr. Marion did not address whether private conduct, such as that he has alleged Officer Call and Officer Tomlinson engaged in, can serve as the basis for a constitutional claim under the Utah Constitution. This failure is fatal to the entirety of his claim.

Second, turning to the claim against Ogden City and Roy City, Mr. Marion argues that the Utah Supreme Court's recent articulation of the requirements of such claims is inapplicable

"as that case dealt with summary judgment, not a motion to dismiss." (Opp. [Dkt. No. 13] at 5.) Mr. Marion's position appears to be that while he will ultimately be required to "*show* an action pursuant to official municipal policy of some nature caused a constitutional tort," *Kuchcinski*, 2019 UT 21, ¶ 32 (emphasis added), he need not *plead* the same to state a claim. This is inconsistent with the federal pleading standard, which requires a plaintiff to "set forth plausible claims animating the elements of her causes of action," and provides that "[p]leadings that do not allow for at least a 'reasonable inference' of the legally relevant facts are insufficient." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (quotation marks omitted). As discussed above, Mr. Marion has not sufficiently alleged the existence of a municipal policy that caused the alleged violation of his constitutional rights. His characterization of his complaint as alleging that Ogden City and Roy City "have promoted, supported, and covered up malfeasance by their officers" (Opp. [Dkt. No. 13] at 5)—which is limited to this incident—is not sufficient to plead an official municipal policy, a well-defined legal concept in the context of constitutional claims.

**CONCLUSION**

For the foregoing reasons and those set forth in Defendants' motion, the Court should dismiss each of Mr. Marion's claims against them.

DATED this 11th day of September, 2019.

SNOW CHRISTENSEN & MARTINEAU

/s/ Dani N. Cepernich
Heather S. White
Dani N. Cepernich
*Attorneys for Defendants Ogden City, Morgan County, Roy City, Lucas Call and Tyler Tomlinson*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of September, 2019, I electronically filed the foregoing **REPLY MEMORANDUM SUPPORTING MOTION TO DISMISS (DKT. NO. 8)** with the Clerk of the Court using the CM/ECF System:

Jonathan D. Hanks
Kaufman
256 Historic 25th St.
Ogden, UT 84401
jhanks@ascenduslaw.com

*Attorneys for Plaintiff*

/s/ Shelly Deal
Legal Assistant